AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

**UNDER SEAL**

FILED JUL 2 5 2018
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

LOCATION-BASED SERVICES AND STORED TELECOMMUNICATIONS RECORDS FOR AT&T CELLULAR TELEPHONE NUMBER (202) 674-2227

Case No. 1:18-SW-422

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the  Northern  District of  Texas , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute controlled substances |

The application is based on these facts:
See attached affidavit of Special Agent Bridgit DePietto, Federal Bureau of Investigation (FBI)

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bridgit DePietto, Special Agent, FBI
*Printed name and title*

Reviewed by AUSA Tobias D. Tobler

Sworn to before me and signed in my presence.

Date: 7/25/18

/s/ Michael S. Nachmanoff
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

Hon. Michael S. Nachmanoff, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to Be Searched*

1. The cellular telephone assigned call number (202) 674-2227 (the "Target Cell Phone"), whose service provider is AT&T, a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas.

2. Information about the location of the Target Cell Phone that is within the possession, custody or control of AT&T.

## ATTACHMENT B

*Particular Things to be Seized*

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(c)(1)(A) AND 3122(a)(1) FOR (1) THE DISCLOSURE OF LOCATION BASED SERVICES; (2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS FOR TELEPHONE NUMBER (202) 674-2227; AND (3) INSTALLATION OF A PEN REGISTER AND TRAP AND TRACE DEVICE | (UNDER SEAL)<br><br>No. 1:18-SW-422 |

AFFIDAVIT IN SUPPORT OF APPLICATION

I, Bridgit DePietto, being duly sworn, depose and state the following:

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (202) 674-2227 (the "Target Cell Phone"), whose service provider is AT&T, a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since February 2013. Since October 2013, I have been a member of a transnational organized crime squad where my primary duties include the enforcement of federal laws related to crimes committed by transnational organizations and other criminal street gang organizations. As a special agent, I have participated in controlled purchases of illegal narcotics, conducted visual and electronic surveillance, executed arrest, search, and seizure warrants, and interviewed many

individuals involved in drug trafficking activities. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology of drug traffickers.

3. Based on my training, experience, and participation in narcotic and drug-related investigations, I know that it is common for individuals engaged in the distribution of controlled substances to use telephonic communications to further their criminal activities by coordinating the distribution of narcotics, illegal proceeds of narcotics trafficking, and other efforts of co-conspirators. I also know that individuals engaging in the distribution of controlled substances use cellular telephones and cellular telephone technology to communicate and remain in constant contact with customers and the sources of those controlled substances. In addition, I know that individuals who engage in the distribution of controlled substances use cellular telephones to exchange information with customers and/or source(s) of supply through text and instant messaging in addition to direct telephone conversations.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed, are being committed, and will be committed by SPENCER PAK. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals engaged in the commission of these offenses.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6. The FBI and Fairfax County Police Department are investigating the criminal activities of SPENCER PAK, a drug trafficker active within the Eastern District of Virginia. In August 2017, a confidential informant ("CI") with knowledge of PAK's narcotics distribution activities conducted three controlled purchases of cocaine from PAK. Law enforcement conducted mobile surveillance of each controlled purchase, all of which occurred in Chantilly, Virginia, in the Eastern District of Virginia. Prior to each purchase, law enforcement provided the CI with official funds to use to purchase narcotics. Law enforcement also searched the CI to ensure the CI did not possess contraband. Following each purchase, law enforcement obtained the drugs the CI had purchased from PAK, and searched the CI again to ensure the CI did not possess contraband. During the three controlled purchases, the CI obtained a total of approximately 24 grams of substances that field tested positive for the presence of cocaine. Investigators visually identified PAK at each purchase.

7. Following these purchases, the CI provided PAK with contact information for an undercover law enforcement officer ("UC") posing as a drug distributor. PAK contacted the UC, and the UC thereafter began purchasing narcotics from PAK. Before, during, and after each drug transaction, the UC and PAK communicated by text message and or/voice call in order to coordinate the transaction. The transactions all occurred in parking lots in Chantilly, Virginia.

8. On or about August 30, 2017, PAK sold the UC approximately 14 grams of a substance that field-tested positive for the presence of cocaine. Between September 26, 2017, and May 31, 2018, the UC conducted five undercover purchases of narcotics from individuals who PAK sent to the UC to conduct the transactions on PAK's behalf. Prior to each transaction, PAK contacted the UC by text message and/or voice call to coordinate the transaction between the UC

and PAK's associate. Over the course of these five transactions, the UC obtained more than 400 grams of substances that field-tested positive for the presence of cocaine.

9. On May 30, 2018, PAK contacted the UC from a device assigned the call number (202) 674-2227, *i.e.*, the Target Cell Phone. PAK had previously contacted the UC from other telephone numbers. PAK thereafter used the Target Cell Phone to coordinate a transaction on May 31, 2018, at which the UC purchased from PAK's associate approximately six ounces of a substance that field-tested positive for cocaine.

10. Since May 2018, PAK has continued to use the Target Cell Phone to communicate by text message and/or voice call with the UC. The most recent such communication occurred on or about July 19, 2018, during which PAK discussed future drug transactions with the UC.

11. According to records obtained from AT&T, the call number assigned to the Target Cell Phone is registered to "ATT CUSTOMER" at "14240A Centreville Square, Centreville, VA 20121." This address is the physical location of an AT&T store. The call number assigned to the Target Cell Phone was activated on May 19, 2018.

12. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering

4

specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

13. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

14. Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

16. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B,

which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

17. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

18. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

_____
Bridgit DePietro, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 25th day of July 2018.

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
The Honorable Michael S. Nachmanoff
United States Magistrate Judge

6

## ATTACHMENT A

*Property to Be Searched*

1. The cellular telephone assigned call number (202) 674-2227 (the "Target Cell Phone"), whose service provider is AT&T, a wireless telephone service provider headquartered at 208 S. Akard Street, Dallas, Texas.

2. Information about the location of the Target Cell Phone that is within the possession, custody or control of AT&T.

## ATTACHMENT B

*Particular Things to be Seized*

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).